**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO.  16-21461-CIV-RNS**


**OLENA GONCHARENKO,**

                 Plaintiff,

     vs.

                                    Miami, Florida
                                    March 22, 2017
**ROYAL CARIBBEAN CRUISES, LTD.,**     Pages 1-21
*a Liberian Corporation,*

                 Defendant.
_____

**TRANSCRIPT OF MOTION HEARING**
**BEFORE THE HONORABLE ALICIA M. OTAZO-REYES**
**UNITED STATES MAGISTRATE JUDGE**


**APPEARANCES:**

**FOR THE PLAINTIFF:**
                 *David W. Singer & Associates, P.A.*
                 **BY:  PETER G. WALSH, ESQ.**
                 1011 South Federal Highway
                 Hollywood, Florida 33020


**FOR THE DEFENDANT:**
                 *The Chartwell Offices, LLP*
                 **BY:  ANDREW D. CRAVEN, ESQ.**
                 200 South Biscayne Boulevard
                 Suite 300
                 Miami, Florida 33131


**TRANSCRIBED BY:**        DAWN M. SAVINO, RPR
                        Official Court Stenographer
                        400 N. Miami Avenue, 10S03
                        Miami, Florida  33128
                        Telephone:  305-523-5598

```
1                    P-R-O-C-E-E-D-I-N-G-S
2              COURTROOM DEPUTY:  All rise.  The United States
3    District Court for the Southern District of Florida is now in
4    session, the Honorable Alicia M. Otazo-Reyes presiding.
5              THE COURT:  Good afternoon, everyone.
6              COURTROOM DEPUTY:  Olena Goncharenko versus Royal
7    Caribbean Cruises, Limited, case number 16-21461-civil-Scola.
8              Counsel, please state your appearances for the record.
9              MR. WALSH:  Good afternoon.  Peter Walsh for the
10   Plaintiff, Ms. Goncharenko.
11             MR. CRAVEN:  Andrew Craven for the Defendant, Royal
12   Caribbean Cruise Lines.
13             THE COURT:  All right.  You may be seated except when
14   addressing the court.
15             I have Defendant's motion to strike Plaintiff's expert
16   disclosures, or in the alternative, to compel better expert
17   disclosures.
18             I know that a summary judgment has been filed on
19   February 27th pending before Judge Scola.  I pulled the cases
20   that were cited by Defendant, the Musafar (ph) case by Judge
21   Scola, and then there's the case by Judge Ungaro, Lichtenberg,
22   that follows Musafar.  Being that this is a Judge Scola case,
23   his ruling in Musafar needs to be followed, and his view of this
24   matter of the rule, what are called hybrid experts, treating
25   physicians that they -- if they are going to provide opinions on
```

1   causation, prognosis and/or future implications of injury, such

2   treating physicians must provide a full report under

3   26(a)(2)(b), as opposed to just a disclosure under 26(a)(2)(c).

4          And I think Defendant is complaining, not only of the

5   lack of disclosure under (b), but also that there was no formal

6   disclosure under (c), and that only the doctors' notes were

7   disclosed.

8          Again, we are operating in a Judge Scola case within

9   the confines of Musafar.  So that's what dictates the ruling.

10          So let me hear from Mr. Walsh how you view this matter,

11   what you think you did, if it was sufficient.  Obviously there

12   hasn't been a full expert discovery -- expert report produced by

13   the treating physicians.  So what are you trying to get in and

14   what is your justification, Mr. Walsh, so we can just sort of

15   like address this in terms of what we have in this case.

16          MR. WALSH:  Thank you, Your Honor.

17          May I step to the lectern?

18          THE COURT:  Yes.  Wherever you're comfortable.

19          MR. WALSH:  Your Honor, first just sort of -- and I can

20   answer the question directly in about four minutes.

21          But first, I want to just state that my position is

22   that I've abided by the trial order in the case law, and that my

23   disclosure complies with Rule 26(a)(2)(c) to the letter.  That's

24   my first argument.

25          My second argument is the case law cited by the defense

1   says that sanctions such as the ones here he's asking for,

2   namely striking of the experts, are subject to a test of

3   prejudice and willfulness and things like that.

4           But first, to answer the question directly, after Judge

5   Scola issued the order in Musafar, some time later I believe,

6   Judge Scola amended his trial order.  I say "I believe" because

7   I've never seen the trial order in Musafar, but the trial order

8   in this case looks like it has, on Page 1, language listed from

9   the Musafar case with a twist, with a slight change.  If I can

10  show the court, if the court doesn't have it.

11          THE COURT:  I have it.

12          MR. WALSH:  Yeah.  At the very bottom, if you notice

13  Your Honor, where it says "when a treating physician".

14          THE COURT:  Yes.

15          MR. WALSH:  That language differs from Musafar in that

16  it doesn't say that treating doctors may not testify about

17  causation absence a 26(a)(2)(b) report.  In fact, it says

18  "treating physicians", this is the trial order, "offering

19  opinions beyond those arising from treatment are experts from

20  whom full 26(a)(2)(b) reports are required".  Now, that differs

21  from Musafar in that Musafar quotes from the In Re:  Denture

22  Cream case, and Musafar says that when treating physicians go

23  beyond such matters and include opinions on causation, prognosis

24  and future implications, then 26(a)(2)(b) is implicated and

25  required.  Those words about causation, prognosis or future

1    implications are not in the trial order.  And I've got to read

2    that as sort of intentional, I assume.

3            But what makes this case --

4            THE COURT:  I don't think any of us can read into what

5    was meant by that, and I don't think any of us are in a position

6    to make that determination.

7            MR. WALSH:  Right.  That's why I said it's only an

8    assumption.  But I'm just telling you why I responded the way I

9    did with my report.

10           Secondly, what's different about my expert's

11   disclosures, my experts' reports, are that within the reports,

12   those experts talk about causation.  And they do it in the

13   context of their treatment.  Now, these treating experts, Your

14   Honor, aren't experts -- aren't doctors that I retained, they

15   aren't doctors that I sent material, they're not doctors that

16   I've prepped in any way in writing these reports, these reports

17   were written totally independent of me.  And that's important

18   because that's one of the things the case law looks at.

19           For example, in the Denture Cream case that Judge

20   Scola's Musafar order looks to, it talks about things that bring

21   treating physicians into the category of retained experts.  It

22   looks to whether they review information provided by lawyers.

23   It looks to whether their opinions are formed specifically in

24   anticipation of litigation.  My experts don't fall into those

25   categories.  So I think, respectfully, that I was right in

6

1    categorizing these three experts, three treating doctors as

2    26(a)(2)(c) doctors, not 26(a)(2)(b) doctors.  To the extent

3    that the court agrees with me, I'll be happy to get them to

4    produce new reports.

5         The court -- the case law looks to whether the

6    Defendant is prejudiced or harmed or surprised.  Since all of

7    these disclosures have been in the Defendant's possession since

8    I did my initial Rule 26 disclosures in July of 2016, there's no

9    surprise, no harm.

10        Not only that, but we're scheduled or we're presently

11   scheduling the depositions of these three experts in New York in

12   three weeks.  So they haven't been deposed yet.

13        Moreover, on the issue of surprise and things like

14   that, the defense counsel gave his two medical experts, his two

15   retained experts, all of these medical records and the doctors

16   have had no problem reviewing them, critiquing them, dissecting

17   them.  So clearly, the defense has all these records.  They've

18   had them for a long time and they've used them with their

19   experts, as they should.  So there's no prejudice.  And I think

20   it's a 22 -- 26(a)(2)(c) expert.

21        That's pretty much my argument on that issue.

22        THE COURT:  But the question is, and the Defendant's

23   reply says that even -- even if the expert -- if the treating

24   doctors were deemed to be the hybrids that 26(a)(2)(c)

25   contemplates, that you did not make the required disclosures by

1    that provision, that you state the subject matter and that you

2    provide a summary of the facts and opinions.  So that's what

3    they're saying, that you don't even -- even if you don't go to

4    Musafar and 26(a)(2)(b) --

5              MR. WALSH:  I see.

6              THE COURT:  -- that you didn't comply.  So it's sort of

7    like a double-edged motion on their part.

8              MR. WALSH:  Right.  And I can address that as well.  I

9    believe they attached my disclosure, which was timely, came in

10   the form of a detailed letter to defense counsel going through

11   all of -- point by point all of the aspects required under

12   26(a)(2)(c).  I told him -- I addressed the opinions.  I said

13   for these opinions, all of my doctors' opinions, the basis for

14   those opinions, the facts on which the opinions are based are

15   all within the doctors' records which I've provided.  And I

16   think I'm allowed to do that where in a case like this, the

17   doctors actually talked about causation and gave their opinions

18   there.

19             THE COURT:  So you're saying that you don't need to

20   comply with the rule; that just by saying to them, you know, the

21   requirements of the rule can be found in the doctors' notes is

22   sufficient?  I mean, I haven't -- as I understand it, you know,

23   we go back historically to treating physicians were not deemed

24   experts.

25             I recall when I used to clerk for Judge Shelby

1    Highsmith, that that was part of our scheduling order; treating

2    physicians are not experts, they're fact witnesses.  Back then,

3    you needed special permission to depose experts.  So he would

4    say you can depose the doctors all you want.  But then came the

5    change to the rule and, you know, formulated these hybrid

6    experts to accommodate treating physicians, and it does have a

7    requirement that this disclosure be done.

8           You know, you're saying you believe that you were fully

9    complying and if you disagree, let me know and I'll give you

10   whatever I have.  But that's not really -- if you think about

11   it, that's not really complying with the rule.  It's sort of go

12   find it in the notes and if you want more, then I'll comply with

13   the rule.

14          Do you follow what I'm saying?

15          MR. WALSH:  I do and -- I understand, Your Honor, and

16   obviously if the court disagrees, I can do more.  But

17   respectfully, I read the rule differently.  The rule says if the

18   witness is not required to provide a written report under

19   26(a)(2)(c), let's say arguendo we're in that category, my

20   disclosure -- it says I need to give a disclosure and it must

21   state the subject matter on which the witness is expected to

22   present evidence, a summary of the facts and opinions to which

23   the witness is expected to testify.  Now, it doesn't say that I

24   need to take my doctors' -- by the way, my doctors' reports are

25   concise, they're about three or four or five pages long.  It

9

1  doesn't say I need to extract this information and summarize it

2  for the defense, at least I don't think it does.  I think it

3  says I need to provide this information to the Defendant.  And I

4  thought rather than me sort of just rehashing all of the words

5  my doctor said in his extremely concise report, that I don't

6  even think I could make more concise if I tried, I thought it

7  made sense to say exactly what I said in that disclosure.  The

8  disclosure doesn't say that, you know, that the format that I

9  need to provide it.

10       So respectfully, I thought I complied with the rule.  I

11 mean, imagine if I were to sit down and summarize the facts and

12 opinions and give them to defense, he wouldn't be any more

13 educated than he is now.  In fact, he would be less educated

14 than he is now having read the actual report.  I think where an

15 expert needs to do more and where counsel like me needs to do

16 more is where the expert report doesn't really disclose the

17 things it's supposed to disclose.  In fact, my expert report

18 does -- he talks about causation.

19       And by the way, there is one exception where his motion

20 is well taken.  My expert did not give an opinion on permanency.

21 That's one thing where I concede to the defense I did not comply

22 with Rule 26(a)(2)(c).

23       So my argument is that if I had a reasonable

24 justification for believing I complied with the rule, I'll

25 provide more.  If the court wants me to rehash what my doctor

1   wrote, I'll be glad to.

2        THE COURT:  That's not the idea is that you rehash what

3   the doctor said, but that in some fashion, the information that

4   is listed be provided specifically.  I mean, otherwise the rule

5   would have said that they must provide the doctors' reports or

6   would have said must provide the doctors' records.  But the rule

7   doesn't say that.  The rule says you have to provide, you know,

8   the summary as it says specifically.  You have to provide the

9   subject matter --

10        MR. WALSH:  Right.

11        THE COURT:  -- and a summary of the facts and opinions.

12   So you know, that's what the rule says and, you know, that's

13   what everybody lives with.

14        Now you're saying that they're not prejudiced because

15   their two experts were able to digest the medical reports and

16   were able to counter them and so on.  But the argument from the

17   Defendant is -- and I'm looking at the reports and honestly, you

18   know, I don't see -- I mean, they're like regular doctors'

19   reports.  You know, complaint, medical history, medication, exam

20   and so on.  You know, whatever the doctors called their usual

21   thing.

22        MR. WALSH:  By the way, the defense didn't give you the

23   complete records, but where the causation opinion appears and

24   where the exact injury is discussed --

25        THE COURT:  Well they are challenging -- I believe they

1      are challenging -- I'm not sure, I'll have to hear from

2      Defendant, but what they attach was a CT scan from Urban

3      Radiology and the report from Dr. Golzad, what appeared to be

4      notes from a patient visit and something else from him on a

5      test.  It seems to be records, and then something about some

6      hearing thing, and an EKG.

7          MR. WALSH:  One of the things, though, that the defense

8      claims is that Dr. Golzad never gave an opinion that the

9      Plaintiff suffered a traumatic brain injury.  That record is not

10      there.

11          THE COURT:  All right.  Let me hear from Defendant and

12      see what you can contribute to this discussion.

13          MR. CRAVEN:  Thank you for your time this afternoon.

14          Just to address the points that were raised, we gave --

15      we provided the court with a copy of all the records that were

16      provided to us in the initial disclosures.  And to kind of start

17      at the beginning, and obviously the court is very aware and has

18      read everything, but to summarize, the initial e-mail to us on

19      the date for expert disclosures doesn't provide a name of a

20      doctor, an address of the doctor, any contact information for a

21      doctor.  It basically says go look at the medical records

22      produced from discovery.

23          So what was produced to Your Honor in our original

24      motion were those medical records that were provided in response

25      to the request for production.  None of those records indicate

1    that this Plaintiff was injured on a cruise ship, and the causal

2    relation of that injury is the diagnosis that she now presumably

3    has by these doctors.

4            Musafar is on point and binding.  Obviously the court

5    is very aware of that.  And as the court is aware, this

6    disclosure would fail under Rule (c) or Rule (b).  Rule (b), I

7    don't think there can be any significant dispute that if these

8    doctors are going to opine regarding causation and damages, a

9    Rule B report was required.  Judge Scola has already weighed in

10   on that, that is binding case law which is different than the

11   language, and frankly it's not even that different from the

12   language in the court's trial order.  The Rules of Civil

13   Procedure still apply.

14           Under Rule (c), as of today, we still do not have a

15   summary or any substance, facts or opinions from a doctor who

16   says that the injury on this cruise ship is causally related to

17   the complaints that she's now making or the medical conditions

18   she now has.  It fails under (b), it fails under (c).

19           The next issue is then prejudice.  And the prejudice is

20   very apparent in this case in that we've already filed our

21   motion for summary judgment.  And the Defendant's motion for

22   summary judgment really goes to the heart of the elements of a

23   tort.  You have duty, breach, causation and damages.  And this

24   issue that's before the court right now raised in our motion for

25   summary judgment is that because of the noncompliance with the

1   trial order and the Rules of Civil Procedure, the Plaintiff

2   can't establish causation or damages, half of the elements

3   required to prove a tort and therefore, the Defendant's entitled

4   to summary judgment.

5        I didn't cite this case, I recently had a matter in

6   front of Judge Turnoff were the same issue arose and at that

7   point, the summary judgment had already been filed, prejudice is

8   created. This isn't something that can now be fixed.  It's

9   essentially the Defendant being required to tip its hand and

10  show its cards in a motion for summary judgment, and then the

11  opposing party being able to say "okay, now we know what they're

12  doing, let's go get the evidence, let's fix this so we can now

13  combat the motion for summary judgment", which is completely

14  contrary not only to the Rules of Civil Procedure, but also the

15  trial order.

16       And the trial order is staggered, as the court's aware,

17  with certain deadlines so that expert disclosures happen at a

18  certain time.  Particularly the Plaintiff's first, then the

19  Defendant's, then rebuttal, and then deadlines for motion for

20  summary judgment.  We had to file our motion for summary

21  judgment, we waited until the deadline, the day that it was due,

22  and we argued that the Plaintiff can't meet two of those four

23  elements.

24       Another thing I need to point out is the confusion

25  that's been occurring here.  The original e-mail to us lists no

1    doctors.  Then we receive a letter indicating some doctors will

2    be called, and then we receive a letter saying different doctors

3    would be called; frankly, adding a doctor that wasn't on the

4    original list.

5         I think the opinion in Musafar is on point.  And

6    another case that I would urge the court to consider, which I

7    think it already did, is the Jones matter.  I believe that was

8    judge -- forgive me.  At any rate, that's the matter we cited

9    that was in front of, I believe, Judge Torres, which dealt with,

10   under at least Rule C, the exact same issue here, which is you

11   can't say look at discovery to meet the obligations under the

12   rule for expert disclosures.

13        THE COURT:  I see the e-mail dated February 8th.  Was

14   that the deadline for disclosures?

15        MR. CRAVEN:  Correct.

16        THE COURT:  And then the follow-up letter February

17   10th, two days later with the names.

18        MR. CRAVEN:  And then a letter attached to our reply

19   from last week with two doctors listed.  Give me one second,

20   Your Honor, and I'll grab it.

21        THE COURT:  Well, you know --

22        MR. CRAVEN:  Sorry.  It's an e-mail of March 13th, that

23   should be one of the exhibits to our reply.  It lists three

24   doctors, one of whom is Schweiger, if I'm pronouncing that

25   correctly.  That's not on the prior letter.

1        THE COURT:  I'm trying to pull that up.

2        You know, if this were another District Judge, I could

3   give an opinion on how I read the rule.  But he has already

4   given an opinion on how he reads the rule, and I know that quite

5   a few attorneys in this jurisdiction cite to that case and rely

6   on it.  So we're not operating on a blank slate.

7        And even this letter, Mr. Walsh, dated March 13th,

8   that's a full month after the disclosures were due, still

9   doesn't have, you know, what each of these doctors are going to

10  testify about.  Not even the subject matter, much less the

11  summary of facts and opinions.  So even a month later, it's

12  still not -- not even under (a)(2)(c).  No effort is made to

13  comply with the rule.

14        MR. WALSH:  Right.  And I have a response to that, but

15  I'll wait until he's finished.

16        MR. CRAVEN:  I'm done.  Unless you had anything

17  further.

18        THE COURT:  See, and then here in addition to what he

19  wrote in his reports, Dr. Golzad will also testify that the

20  traumatic brain injury is a permanent injury.

21        MR. WALSH:  Right.  That's the additional thing that --

22        THE COURT:  But then they have to fish out of Dr.

23  Golzad's records --

24        MR. WALSH:  It's not fishing, Your Honor.  If I may

25  approach, because they didn't give you -- they didn't show you

1    the simpleness of his disclosure.  I mean, this is not a

2    complicated case where they had to fish through anything.  In

3    fact, they're experts --

4         THE COURT:  Well, they're experts.  You said it.

5    They're experts and, you know, I'm well aware that they're

6    experts, what they did, obviously, and they've looked through

7    it.  But, you know, where we stand right now is this is the sum

8    and substance of the disclosures.  There is a motion for summary

9    judgment that has been filed.  There is a response.  I was

10   looking through that to see if there was any request under Rule

11   56(e), you know, to supplement or, in some fashion, seek

12   additional ways of countering the summary judgment motion which

13   sometimes one sees.  I don't see a 56(e) affidavit that I can

14   tell.  I may be wrong.

15        MR. WALSH:  You mean from the defense?

16        THE COURT:  From Plaintiff opposing it.  So I do not --

17        MR. WALSH:  These medical records --

18        THE COURT:  I do not find that your disclosures

19   complied with 56 -- I'm sorry, with 26(a)(2)(c).  They do not.

20        MR. WALSH:  And respectfully --

21        THE COURT:  And much less with, you know, even putting

22   aside Musafar and the requirement that he has -- again, that

23   Judge Scola has interpreted the rule under that way, and I'm

24   making no opinion of what my own interpretation would be because

25   I am bound by his ruling.

1           MR. WALSH:  Right.  And Your Honor, I understand.  The

2    court disagrees with me and the court has held that my response

3    did not comply with 26(a)(2)(c).  I understand that.

4           The next step, though, as far as remedy, the case --

5    the Denture Cream case which is the case that Musafar quotes

6    from and relies upon makes it clear.  And if I could read one

7    sentence from the order, it says "the remedy of exclusion of

8    critical evidence is an extreme sanction not normally to be

9    imposed absent the showing of willful deception or flagrant

10   disregard of a court order".

11          Now, with all due respect, there has been no willful

12   deception or any flagrant disregard of a court order.  I've

13   tried to explain to the court my reasoning as to why I believe I

14   complied with the order.  I think Musafar -- first of all, I

15   think what controls this case is the court's order in its trial

16   order which differs slightly from Musafar.

17          THE COURT:  Well, I would say that that trial order

18   viewed in the context of Judge Scola's very, you know, on point

19   ruling in Musafar, you know, I don't think that -- and again, we

20   don't know what he meant.

21          MR. WALSH:  I suppose.

22          THE COURT:  But I don't think you can read --

23          MR. WALSH:  I think you're right.

24          THE COURT:  -- the trial order as a retreat from his

25   prior order.  It would take another order that would say "oh, I

1   didn't really mean what I said in Musafar, I only meant X".

2          MR. WALSH:  I agree, Your Honor.

3          THE COURT:  You have to look at it.

4          MR. WALSH:  I think I'm splitting hairs by trying to

5   distinguish the order.

6          THE COURT:  Well, the bottom line is that, you know,

7   the Defendant's motion was to strike the expert disclosures or

8   in the alternative, to compel better expert disclosures.  I know

9   that this was filed back on February 22nd, and Judge Scola did

10   refer that to me fairly recently.

11          Let me hear from Defendant, now that you have filed the

12   motions for summary judgment and the response has been filed.

13   Because of the passage of time, are you withdrawing the

14   alternative request or are you still amenable to that

15   alternative request?  What's your position?

16          MR. CRAVEN:  Your Honor, in litigating these cases and

17   on behalf of myself and my client, you know, we always try to

18   seek a middle ground where everybody can either walk away happy

19   or slightly disappointed.  But the issue here, and I think this

20   is where the court is going, is that the motion to strike

21   experts was filed alerting everybody to the issue that was going

22   on, and then the summary judgment was filed.  I wish I could

23   agree that there is some kind of alternative that we could reach

24   here, but the motion for summary judgment was subsequently

25   filed, briefed by me, I got paid for doing that by my client.  A

1   response was filed recently, I'm in the midst of working on a

2   reply.  Frankly, the issue is too late.  And that in itself is

3   the prejudice since the motion for summary judgment isn't

4   ancillary to the issues raised.  They rely on the issue that's

5   before the court right now.

6          THE COURT:  That's the situation.  So when you -- so

7   the response that the Plaintiff filed to this motion to strike

8   was that the disclosure had been all that was required, from

9   what I can see.  And that the experts already -- but you didn't

10  -- did you rely on your experts at all in your summary judgment

11  motion?  Or did you basically say that they had not met their

12  burden?

13         MR. CRAVEN:  That they had not met their burden.  I

14  frankly wouldn't -- because of this issue, my experts are

15  irrelevant if the relief we're seeking is granted both in this

16  motion and in the motion for summary judgment.

17         THE COURT:  But you still showed it to your experts, I

18  would imagine, to be cautious.

19         MR. CRAVEN:  Yeah.  Any records we have we forward to

20  them.

21         THE COURT:  I find that the disclosures under (a)(2)(c)

22  were insufficient and that due to the passage of time, the

23  alternative motion to compel better expert disclosures has

24  become moot, given that the summary judgment motion was filed

25  relying on this already.

1       So that is my ruling.  You are free, Mr. Walsh, to

2  seek, you know, relief from the District Court due to the fact

3  that this impacts the summary judgment, which is before Judge

4  Scola and not before me.  But again, and I'm not even needing to

5  go to Musafar in making this ruling because I do find that the

6  disclosure was insufficient under (a)(2)(c).

7       So that will be my ruling.  And then, you know, again,

8  you know, we try to make sure that we do things in the fairest

9  possible way.  But at the same time, you know, fairness applies

10  to both sides.

11       MR. WALSH:  Right.  And respectfully, Your Honor, I'm

12  not trying to reargue this, but the medical records have

13  absolutely nothing to do with the summary judgment motion.  What

14  the summary judgment motion says is we've moved to strike the

15  Plaintiff's experts and if that motion is granted, then we

16  should win because the Plaintiff can't prove damages.

17       THE COURT:  Causation.

18       MR. WALSH:  Right.

19       THE COURT:  It's causation.

20       MR. WALSH:  So in other words, what he's saying is not

21  that it's prejudiced him in preparing a motion for summary

22  judgment at all.  He can't say that it prejudiced him because it

23  didn't.  The absence of these records has nothing to do with

24  summary judgment.

25       THE COURT:  No, I think you're missing the point,

1    Mr. Walsh.  I think the point that's being made by defense

2    counsel is they moved a certain way on the summary judgment

3    because of the posture of the case at that point in time.  Not

4    that there -- they obviously had, you know, their experts review

5    the records sort of like as a cautionary thing in case things

6    worked out a different way.  So it's not that kind of prejudice,

7    it's the status of the case where the summary judgment has

8    already been filed and briefed.

9           And maybe a response on your part to the motion for

10   summary judgment, and I'm not trying to tell you how to

11   litigate, might have brought up -- you know, like I said,

12   there's Rule 56(e) that is sort of like a little bit of a safety

13   valve for people who are opposing a summary judgment motion.

14          All I can say is I find what I find, and I will issue

15   my order accordingly, and I think that any relief from the

16   effect of that order would need to be addressed to Judge Scola.

17   All right?

18          COURTROOM DEPUTY:  All rise.  Court's adjourned.

19          (PROCEEDINGS CONCLUDED)

20                      *  *  *  *  *

21              C E R T I F I C A T E
     I certify that the foregoing is a correct transcript from the
22   digital audio recording of proceedings in the above-entitled
     matter.
23

24   4-13-2017            /s/ Dawn M. Savino
     Date                 DAWN M. SAVINO, RPR
25